68 F.3d 462
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kun Sik LEE, Defendant-Appellant.
 No. 95-5176.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Sept. 26, 1995.
Decided: Oct. 16, 1995.
 
 James C. Savage, LAW OFFICES OF JAMES SAVAGE, Rockville, Maryland, for Appellant.
 Lynne A. Battaglia, United States Attorney, Kathleen O. Gavin, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Kun Sik Lee pled guilty to conspiracy to violate the food stamp laws, 18 U.S.C. Sec. 371 (1988), 7 U.S.C.A. Sec. 2024(b) (West Supp.1995), and was sentenced to a term of 13 months. He appeals his sentence, contesting the district court's determination of the amount of loss. United States Sentencing Commission, Guidelines Manual, Sec. 2F1.1 (Nov.1994). We affirm.
 
 
 2
 Lee and his wife operated Landover Seafood and Grocery, a carryout store which sold prepared foods and convenience items. Wallace Ward worked as the cook and cashier. In 1992, Lee obtained an electronic benefits transaction (EBT) machine for processing food stamps. Thereafter, Lee and his wife conspired with Ward to violate the food stamp laws by exchanging food stamps for cash. Lee and Ward entered guilty pleas and Ward cooperated with the government.
 
 
 3
 Landover Seafood was reimbursed in the amount of each EBT transaction by the Food and Nutrition Service of the Department of Agriculture. Food stamps may be used only for eligible food items, and it is illegal for a storeowner to dispense cash in return for food stamps. Ward generally recorded a sale for about twice the amount of cash desired by the customer. He would then give half the total amount to the customer in cash. The store would receive the full amount of the reported sale from the Food and Nutrition Service.
 
 
 4
 The only disputed issue at Lee's sentencing was the amount of loss. The government had stipulated in the plea agreement that the loss to the Food and Nutrition Service was not over $350,000. The case agent estimated that the loss was more than $200,000 using four different methods. The estimates were as follows:
 
 
 5
 (1) EBT transactions over $20; estimated loss $299,611. This method assumed that all EBT transactions over $20 involved an illegal cash payment because the store carried few items which could be bought legitimately with food stamps. Also, two similar carryout stores in the same neighborhood had very few EBT sales over $20.
 
 
 6
 (2) Monthly EBT totals over $2500; estimated loss $357,125. This method assumed that Landover Seafood could not conduct more than $2500 worth of legitimate EBT transactions in any month, based on the number of eligible items carried and the monthly EBT totals of the two comparison stores.
 
 
 7
 (3) Cost of goods sold plus 20% markup; estimated loss $338,391. This method determined the cost of eligible goods bought by Landover Seafood from January 1994 to June 1994 (using the store's receipts), and allowing for a 20% markup on average. The total was subtracted from the actual amount of reported EBT sales, and the loss for the 6-month period was extrapolated over the whole 27-month period of the conspiracy.
 
 
 8
 (4) Checks to cash and owners; estimated loss $320,800. This method totalled the amount of cash withdrawn from the store's bank account during the conspiracy and doubled it because the cash given to the customer was half the amount of the sale reported and reimbursed.
 
 
 9
 Based on these estimates, the probation officer recommended an 8-level enhancement under guideline section 2F1.1(b)(1)(I) for a loss exceeding $200,000. Lee asserted in his written objections that the loss was less than $200,000, and he attacked each of the government's methods of estimating the loss as inaccurate or too speculative. In particular, he argued that the government's first method was flawed. He asserted that only EBT transactions over $100 should be assumed to have involved a cash payment.
 
 
 10
 At the sentencing hearing, the case agent testified at length about the government's four methods of estimating the loss and the sources of the information used. Lee presented testimony from his accountant. The accountant's testimony was difficult to understand, but he appeared to say that the markup on eligible items was higher than 20% and might be as high as 60% or 65%. Ward testified that he could not be sure how many customers were given cash in an EBT transaction. The district court ultimately determined that the government had proved by a preponderance of the evidence that the loss was more than $200,000. The court found the government's figures particularly persuasive because all four methods of estimating the loss gave results within a relatively narrow range.
 
 
 11
 On appeal, Lee challenges the loss determination. The district court's calculation of the amount of loss is a factual question reviewed under the clearly erroneous standard. United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir.1995).
 
 
 12
 Lee focuses his challenge exclusively on the government's first method of estimating the loss, the estimate from EBT transactions over $20. He argues that a food stamp purchase of items worth $20 was normal for the store and that the government failed to prove that customers used the cash received from repeated $20 transactions to buy drugs, as the case agent surmised. He argues that the cut-off amount for legitimate transactions should have been $100, which would result in a loss estimate of only $88,000 and an enhancement of 6 levels.
 
 
 13
 Lee's argument is without merit. He ignores the case agent's testimony that a legitimate EBT purchase of eligible items would unlikely go above $20 because Landover Seafood carried so few eligible items. He also ignores the other three methods used by the government to estimate the loss, all of which yielded higher estimates than the over-$20 method. Even if a higher cutoff figure were used which brought the estimate under $200,000 using the first method, an 8-level enhancement would still be justified based on the other three estimates.
 
 
 14
 The government was not required to establish the amount of loss with certainty, USSG Sec. 2F1.1, comment. (n.8), and Lee has not shown that any of the estimation methods used by the government were actually inaccurate or highly speculative. Therefore, the district court did not clearly err in finding that the loss was over $200,000 and in making an 8-level enhancement.
 
 
 15
 We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED